IN THE MATTER OF THE APPLICATIONS OF JAMES AND GEORGE WATSON, FOR A DISCHARGE FROM IMPRISONMENT IN EXECUTION.

The provisions of the act (2 R. S., 3d ed., p. 88, marginal p. 31) relating to the discharge of debtors imprisoned in execution, which, in effect, forbid such discharge, if the debtor has fraudulently disposed of his property, or in case his " proceedings" have not been "just and fair," contain no limitation as to *time*, and it is immaterial whether a fraud upon his creditors is perpetrated before his imprisonment in execution, or intermediate the arrest and examination. DALY and WOODRUFF, JJ., *concurring*; INGRAHAM, FIRST J., *dissenting*.

Accordingly, where, on the application of two joint debtors imprisoned in execution, for a discharge under the Revised Statutes, it appeared, from the examination of the petitioners, that, being copartners together in New York, and hopelessly insolvent, they purchased, in November, 1851, a passage to California, and for the purpose, as declared in their testimony, of avoiding arrest or interruption, published in the newspapers, on the same day, a notice of their dissolution, with a statement that one partner would carry on the business and close up the affairs of their firm ; that four days afterwards, having destroyed their letter-book, they sailed for California, taking with them $8,500, for which no satisfactory account was given ; that being immediately brought back on an executive warrant, judgment in a civil action was obtained against them, whereon, in December, 1852, a *ca. sa.* was issued ; it was *held*, that the facts established a fraudulent disposition of the debtors' property ; and that "the proceedings on the part of the prisoners were not just and fair," *within the meaning of the particular statute* under which the application was made, and that the case was not one wherein a discharge could be granted.   *Per* DALY and WOODRUFF, JJ., *concurring;* INGRAHAM, FIRST J., *dissenting*.

Under such circumstances, statements of the debtors, that their object in seeking a new country was to accumulate the means of meeting obligations to creditors, must be deemed of no weight.  INGRAHAM, FIRST J., *dissenting*.

A difference exists between the act providing for the discharge of a debtor imprisoned in execution, on the one hand, and the act to abolish imprisonment for debt, and to punish fraudulent debtors, on the other, in this: that while the latter provides a punishment for a simple *removal* of property out of the

In the Matter of Watson.

jurisdiction of the court, with a fraudulent intent; the penalties of the former are confined to a fraudulent *disposition* of property for his own benefit, or to injure creditors. *Per* INGRAHAM, FIRST J.

But an insolvent will be held to have *disposed* of his property, within the meaning of the act providing for a discharge from imprisonment in execution, where, with a fraudulent design, he has effectually placed it beyond the reach of creditors by conveying it to a remote part of the country, and in doing so has, by imprudence or misfortune, lost it himself, although he may not have willfully destroyed or given it away. DALY and WOODRUFF, JJ., *concurring.*

. THIS was an application made in pursuance of the provisions of the Revised Statutes, allowing a debtor, imprisoned in execution, to petition for his discharge upon making an assignment for the benefit of the execution creditor. (See article 6, title 1, chapter 5, of the second part of the Revised Statutes, 3d edition, volume 2, p. 88, marginal p. 31.)

In November, 1851, the petitioners, who were copartners, finding themselves hopelessly insolvent, procured a passage to California, and on the same day, to escape arrest and annoyance from creditors, published in the newspapers a notice of their dissolution, with a statement that George Watson would adjust the affairs of the firm, and continue the business at the same place. Within four days afterwards, having destroyed the letter-book used in their business, they sailed for California, taking with them $900 in gold and a draft upon a responsible house for $7,600.

A few weeks after their arrival in San Francisco, a criminal charge was preferred against them by their creditors, and they were brought back to New York upon an executive warrant.

Civil actions were commenced against them, and prosecuted to judgment. Executions against their property having been returned unsatisfied, they were examined in proceedings supplementary to execution, and they testified, in September, 1852, that they were destitute of any money or property whatever.

An execution against their persons was then issued, and in November, 1852, their imprisonment commenced. The

In the Matter of Watson.

petition for a discharge was presented in May, 1853, and the above facts were all disclosed in the examination of James Watson, conducted in accordance with the sixth section of the act. The petitioners stated, under oath, that their object in removing to California was to enable themselves to accumulate sufficient property to pay their Atlantic creditors.

But the grounds chiefly relied upon by their counsel were, First, that in making the right to a discharge conditioned that the debtor's proceedings shall be "just and fair," the particular statute, under which this application was made, referred to his proceedings *in the application*, and not to transactions at any period anterior to his imprisonment in execution. Secondly, that the word " property," used in § 5 of the act, signifies only the property which the debtor had when charged in execution, and on which the execution creditor had an equitable lien, entitling him to an assignment thereof. Thirdly, that the word " creditors," in the same section, is limited in meaning to the *execution creditors*, at whose suit the debtor is imprisoned. Fourthly, that a *removal* of the debtor's property is not the *disposition* of it contemplated in the act. Fifthly, that the act of the debtor, in disposing of his property, at a prior time, for the *then* future benefit of himself and family, is not a bar to a discharge, if no such benefit shall thereby be and remain so secured after he takes the oath prescribed.

These and other points, which are above briefly and imperfectly referred to, were elaborately stated and argued in behalf of the petitioners.

The application was first made at special term, when the following opinion was delivered by DALY, J.:

" An applicant for the benefit of the act is required to make oath that he has not, *at any time* or in any manner, disposed of or made over any part of his property, with a view to the future benefit of himself or of his family, or with an intent to injure or defraud any of his creditors. If it appear, therefore, upon his examination, that he has so disposed of any part of his property, then, in the language of the

statute, his proceedings have not been 'just and fair,' and he cannot obtain a discharge. That the applicants combined to defraud their creditors is, I think, abundantly established by the testimony of James Watson."

&ast; &ast; &ast; &ast; &ast;

"It is urged, on the part of the applicants, that the fraudulent disposition of property contemplated by the act is a disposition made by the debtor between his arrest and his examination; that if he has disposed of property fraudulently before any proceedings were instituted against him, it is no bar to his discharge. But I see nothing in the statute to warrant such a construction of it. There is no limitation prescribed, or any qualification whatever. He is obliged to swear that he has made no such disposition at *any time*.

"These words are plain and unmistakable. To attempt to limit their signification by declaring them to be understood as applying only to a particular period, would be departing from the obvious meaning of language.

"There is nothing in any part of the act, and I have carefully considered it, that will justify such a construction. It is evident, from the terms of the oath prescribed, that the framers of this statute intended to distinguish between the unfortunate and the fraudulent debtor, and meant that the former should have the benefit of the act, and that the latter should not. This distinction was recognized and perpetuated by the act abolishing imprisonment for debt. By the provisions of that act, a fraudulent debtor may, in certain cases, obtain a discharge, as, for instance, when he fraudulently contracted the debt; but a fraudulent disposition of property is equally a bar to a discharge under that act, the debtor being required to take the same oath that the applicants have made in this case. I so held in the case of *Paul Andrict*, when I examined the statute more at length than I now find occasion to do, and referred to a case which I suppose to be expressly in point, namely, *Clark* v. *Wright*, 10 Wend. 584. (See, to the same effect, *Townsend* v. *Morrill*, 10 Wend. 582; *Spear* v. *Wardell*, 1 Comst. 148.)

In the Matter of Watson.

" I can give no consideration to the effect that may follow the refusal to grant the applicants a discharge.

" It is the duty of a judge to declare the law as he finds it. If it is expedient that debtors, who have fraudulently disposed of their property, should be discharged from imprisonment, if they have nothing wherewith to satisfy their creditors, the remedy must be sought at the hands of the legislature. The Code provides, that in all cases of commitment under the chapter authorizing executions against the person, or under the act to abolish imprisonment for debt, the party may be discharged from imprisonment by the court or judge committing him, if he is unable to perform the act required or to endure the imprisonment. But we are not asked to apply that provision to the present case. It is sufficient to say, that under the proceedings now instituted, the applicants cannot obtain a discharge."

On the above decision, an order was entered denying the application for a discharge. The petitioners thereupon appealed to the general term.

*A. R. Dyett* and *John R. Brady*, for the petitioners.

*John McKeon*, for the execution creditor.

WOODRUFF, J.—I think the judge at special term was correct in holding that a debtor who is largely insolvent, who, knowing that fact, converts his property into money, and with intent to avoid his creditors and place himself and his property beyond their reach, or so far beyond their reach that they must send two thousand miles to a new and unsettled country to reach the one or the other, clandestinely and deceitfully departs and takes his property with him, and there wastes it, either in profuse expenses, gambling, or adventures of any kind, including a large sum employed in litigation, to prevent his creditors reaching him, is not entitled to his discharge as an insolvent, when such discharge is resisted on these grounds. His proceedings since his insolvency are

altogether unfair, and tend, in every step, to injustice and wrong. Such a man is not the object of that protection and relief the statute has provided for an unfortunate but honest debtor. In every proper sense of the terms, he is, in my judgment, guilty of disposing of his property to defraud his creditors, not because he has taken it from the jurisdiction of the court, but because, for the very purpose of preventing his creditors from recovering their debts and obtaining that property which belonged to them as his creditors, he has taken it two thousand miles from them—by a journey it required five thousand miles of traveling to reach—and then, in fact, disposed of it to suit his own pleasure.

In this view, it is quite immaterial whether California is within the United States or not. I cannot persuade myself that a man may, for the express purpose of defrauding his creditors, hinder, delay and prevent their collecting their debts, go to a remote part of the country—for example, among the Indians—take all his property with him, and if then, by expenses of living or unforeseen losses, or even by inevitable calamity, he loses his money, return here and ask his discharge, without being liable to the charge of having disposed of his property with intent to defraud, &c.

Disposing of his property does not necessarily import its destruction or giving it away; if, with a fraudulent intent, he places it beyond the reach of creditors effectually, and in doing so loses it himself, it is enough. Nor can I doubt, that when the legislature forbade a discharge, if it was made to appear that the debtor's proceedings were not *just* and *fair*, they meant to embrace the case of an insolvent who knowingly and intentionally had been guilty of acts like these. The statement of the debtor, that he hoped to make money enough in California to pay his creditors, by the use of the money, a use which was, of itself, under such circumstances, fraudulent and unjust as to them, ought not to be allowed to avail him.

I think the order of the special term should be affirmed.

DALY, J., concurring.—In the review of this case, I find nothing that would lead me to a different conclusion from the one formed at the special term.

INGRAHAM, FIRST J., dissenting.—The petitioners were undoubtedly guilty of violating the provisions of the statute to abolish imprisonment, by removing their property out of the jurisdiction of the court, with intent to injure their creditors.

They practiced a deceit in order to get away with their property. Under that act, such a proceeding warrants the commitment of the debtor, and has been held to be sufficient to prevent his subsequent discharge.

Is the same rule to be applied to the proceedings for a discharge under the insolvent laws?

By the act under which this proceeding is taken, the debtor is required to present an account of his property, as it existed at the time of his imprisonment and at the time of presenting his petition. He is also required to make oath that the petition and account are just and true, and that he has not disposed of or made over any part of his estate, to the future benefit of himself or family, or with intent to injure or defraud his creditors.

The difference between these two statutes is apparent. The one punishes the removal of property out of the jurisdiction of the court, with a fraudulent intent; and the other is confined to the fraudulent disposition of property, either for the insolvent's benefit or to defraud his creditors.

A fraudulent removal of property out of the jurisdiction of the court, clearly would not be sufficient to prevent a discharge under this act, if nothing more was established. For the purpose of committing under the non-imprisonment act, such a removal, if from one county to another in the state, when the judgment was in the Common Pleas, was a violation of its provisions, and for the purpose of. that act, was just as effectual as a removal to California. The offence was, removal out of the jurisdiction of the court, and not out of the

state; but it never could be pretended that such a removal from one county to another in the state, if not followed by a fraudulent disposition of the property, with like intent, prevented a discharge under this act.

There is nothing in this statute which prohibits the debtor from leaving the state. There is nothing which prohibits the debtor from taking what property he has with him, if his object is to apply it in an honest endeavor to recover what he has lost. A contrary rule would deprive every man who was at all involved from an effort, by honest endeavors, to regain what he has lost. Nor am I willing to concede that any departure from the state with the debtor's property, even where, as in this case, the debtor resorts to improper means to deceive the creditor, is a perpetual bar to a subsequent discharge under this act. If it were so, then the fraudulent removal would be a bar, even if the debtor subsequently returned and brought his property back. In the opinion at special term, the offence which is deemed sufficient to prevent the discharge is, the removal to California with the property of the debtor, with the intent to defraud the creditor. I am of the opinion that such an act is not within the causes which prohibit the insolvent's discharge.

But in the decision at special term it is added, that the debtors, since they were brought back to this city, have been unable to give a satisfactory account of what they did with the property they carried away with them, except to state, that in September following they had nothing.

The statute requires that the debtors shall furnish an account of their property as it existed at the time of their imprisonment. They have stated this to be nothing. But it appears that, in November, 1851, preceding, when they left for California, they had eight or nine thousand dollars. It is not enough for a debtor to say, he has nothing, with this fact in evidence against him, and unless he can show what disposition he has made of this property, the presumption is, that he still has it in his possession or has applied it for his fu-

In the Matter of Watson.

ture use.   And not only so, but where it appears that the removal from the state was in a clandestine manner, the debtor should be held more strictly to account for money so removed. If, during his absence, he engaged in business, and by misfortune lost the property so taken with him, and that fact is made apparent, then the removal from the state is not, in my judgment, a bar to a discharge under this act.   But if no account is given of the future disposition of the money so taken, and the court is left to decide upon the bare statement that the debtor had nothing at the time of his imprisonment, the court is warranted in concluding that the account rendered by him is not just and correct.   An examination of the evidence, therefore, becomes necessary, to ascertain what account the debtors have given.

On looking through the examination of the debtor, James Watson, I find that when they left for California they had the sum of $8,600, belonging to James and his brother; that his explanation of the expenditures of this money shows the disposition of it abroad, excepting about fifteen or sixteen hundred dollars, which they had on their return.   That this money was imprudently expended is apparent; that it was unfair to the creditors to leave this city, and take the property with them, was equally wrong; and there is reason to suppose that prudence and economy were not exercised in the expenditure.   But the whole of this testimony rests upon the examination of the debtor, and while all his admissions are to be taken strongly against him, it is but fair to give some credit to his explanations.   He states, that in leaving for California, his object was not to defraud his creditors; that he hoped to make money enough to pay off his creditors, which he intended to do, and that such endeavors were frustrated, and his expenditures greatly increased by the action of his creditors in sending for him and bringing him back to this city, under a criminal charge.   He admits having intended to deceive his creditors by the notice published, so as to avoid arrest before his departure.   It is not at all unreasonable to give credence to such statements.   While we know

that all classes, and men of every rank and condition in life have looked upon similar attempts to make money in that place with favor, and have, in many instances, returned with no better success, although under much more favorable circumstances, I do not feel willing to adopt the conclusion that the account given of the expenditures of this money abroad should not be sufficient to relieve the insolvent from the charge of having disposed of his property for his future benefit or to defraud his creditors. If it has been expended as he has stated, then it is not disposed of for his future benefit. If his object in going to San Francisco was to make money and to pay his creditors, I do not think he can be charged with an intent to defraud by that act.

Conceding that the insolvents acted improperly and wrongfully towards their creditors in taking their property out of the jurisdiction of the court, and were guilty of an act which subjected them to arrest under the statute to abolish imprisonment, &c., still I do not think it will justify the conclusion that such acts prevent a discharge under this statute.

They must give an account of their property as it existed at the time of their imprisonment. Previous expenditures of their property, although imprudent or even unfair at the time to the creditors, do not show a reservation of property for the insolvents' benefit, or a disposition with intent to defraud the creditor, when the object in removing was to attempt to make money for the purpose of paying them.

This act was passed long before the act to abolish imprisonment, &c., was enacted. Before the passage of the latter act, the mere removal of property out of the state was never considered as sufficient ground to refuse an insolvent's discharge. Nor was an unwise or imprudent expenditure of the debtor's estate, if made for the purpose of extricating him from his embarrassment, although the object failed, or a foolish and losing speculation with the insolvent's property, in the hope of bettering his condition, considered good grounds for such refusal, where it appeared that the property was gone beyond the reach of his creditor or intentionally lost. Such seems

In the Matter of Watson.

to be this case.  The insolvents exposed themselves to proceedings under the act to abolish imprisonment, &c., by fraudulently removing their property out of the jurisdiction of the court.  They were guilty of foolishly attempting, by a removal to another state, to escape from their creditors, and thereby wasted the greater part of their remaining property. But it does not appear that such disposition of the property was made to defraud their creditors.  On the contrary, all the evidence there is on that point is their own testimony that they hoped to make other money wherewith to pay their debts.  However unfortunate has been the result, aggravated, to some extent, by the course the creditors saw fit to pursue, and using the power of the state, as to criminals, in bringing the defendants back to this state under a requisition of the governor, still I am of the opinion that those transactions are not a bar to a discharge under this act.

I do not understand the counsel for the creditor as urging that there is any evidence that warrants the conclusion that there is now property belonging to the debtors disposed of for their future benefit, or that there has been any fraudulent disposition of property since they were charged in execution. Nothing appears in the testimony to warrant such a conclusion.

Order made at special term, denying the application for a discharge from imprisonment, affirmed.